# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

RICKY T.,

                 Plaintiff,

vs.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

             Defendant.

No.  C20-2088-LTS

**MEMORANDUM
OPINION AND ORDER**

## I.     INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge.  Doc. 43.  Judge Mahoney recommends I affirm the decision of the Commissioner of Social Security (the Commissioner) denying the application by plaintiff Ricky T. (the Claimant)[1] for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f).  The Claimant filed timely objections (Doc. 44), and the Commissioner filed a response.  Doc. 47.

## II.     APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends federal courts refer to claimants only by their first names and last initials because of the privacy concerns social security cases present.

to any fact, if supported by substantial evidence, shall be conclusive . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."  *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."  *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo."  *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits."  *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence

2

differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B.     *Review of Report and Recommendation*

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

The Claimant filed his first application for disability benefits in March 2011, alleging he had suffered from chronic pain in his right shoulder and back, as well as depression and anxiety, since December 2009. The Social Security Administration (SSA) denied his initial application on February 15, 2013, finding the Claimant was able to perform light work (including sitting and standing for six hours of an eight-hour workday). The Appeals Council denied review in May 2014.

The Claimant filed a second application for benefits in September 2014, alleging a disability onset date of February 2013. He subsequently added a claim for SSI benefits for the same time period and amended the onset date to September 2014. After his claim was denied initially and on reconsideration, the Claimant requested a hearing with an Administrative Law Judge (ALJ). An ALJ held a hearing in March 2017. During the hearing, the ALJ ordered consultative physical and psychological examinations. After receiving the results, the ALJ held a second hearing in August 2017 and denied the Claimant's applications for DIB and SSI in September 2017. The ALJ found jobs existed in the national economy that the Claimant could perform, although he limited the Claimant to sedentary work that allowed him to shift positions and found the Claimant would be off task up to 8 percent of the time. The Appeals Council denied review in April 2018. The Claimant sought judicial review of that denial by this court.

In April 2018—while that judicial review was pending—the Claimant filed a third disability claim. After this claim was denied initially and on reconsideration, the Claimant requested a hearing with an ALJ. An ALJ held a hearing and denied the

4

Claimant's third disability application in August 2019. The ALJ included fewer limitations in the Claimant's residual functioning capacity (RFC) than had the ALJ who reviewed the second application, finding the Claimant could perform light work that required simple, routine tasks in which the Claimant was on his feet for less than two hours. The RFC did not include an off-task limitation.

In September 2019, I reversed the Commissioner's denial of the second application, and remanded the case to the agency, because the Vocational Expert (VE) had presented contradictory evidence at the hearing. At that time, the Claimant's appeal regarding his third application was pending before the Appeals Council. The Appeals Council subsequently consolidated the two applications, vacated the ALJ decisions on both and remanded the case to an ALJ for another hearing.

The consolidated application was assigned to the same ALJ who had denied the third application. The ALJ issued a written decision on June 30, 2020. His RFC determination mirrored his findings on the third application—that the Claimant was less limited than the ALJ ruling on the second application found—except that the ALJ included an additional reaching limitation. Ultimately, the ALJ concluded the Claimant was not disabled. The Claimant did not seek review by the Appeals Council, meaning the ALJ's decision became final after 60 days. The Claimant then filed a timely complaint in this court.

Judge Mahoney first analyzed whether the law-of-the-case doctrine required the ALJ to find the Claimant would be off-task 8 percent of the time, as had the ALJ who reviewed the second application. Doc. 43 at 11. The law-of-the-case doctrine "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." Doc. 43 at 11 (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)). Judge Mahoney noted that during judicial review of the denial of the second application, I found the VE had contradicted himself, testifying jobs existed for someone who was off task 10 percent of the time but not for

someone off-task a little more than 8 percent of the time. Doc. 43 at 12. Because I found the VE's conflicting testimony could not support the ALJ's Step Five determination, I reversed the ALJ's decision and "remanded to the Commissioner for further proceedings consistent with this opinion." Doc. 43 at 12 (quoting AR 2639).

Judge Mahoney found the law-of-the-case doctrine did not prevent the subsequent ALJ from discarding the off-task limitation because I did not specifically direct the Commissioner to resolve the conflict in the VE's testimony. *Id.* at 12-13. Judge Mahoney noted that I focused on whether the VE testimony contradicted itself, not whether the off-task limitation was supported by the record. *Id.* Judge Mahoney concluded that because I had not found the Claimant's RFC had to include an off-task limitation, the law-of-the-case doctrine did not require the subsequent ALJ to do so. *Id.* at 13. Further, she noted, the Appeals Council vacated the prior ALJ decision. *Id.* Judge Mahoney ultimately determined that because the Claimant's RFC was not settled, the RFC could be reviewed and reformulated on remand. She further noted that evidence in the record suggested that the Claimant's mental health had stabilized, as his examinations were mostly normal, he rarely complained of issues concentrating and he remained on the same psychiatric medications throughout the relevant time period. Judge Mahoney found that "[t]he nature of the substantial-evidence standard is such that two different ALJs could formulate different RFCs and both be supported by substantial evidence. Here, substantial evidence supports the ALJ's failure to include the off-task limitation, and no further explanation was required." Doc. 43 at 14.

Next, Judge Mahoney addressed the ALJ's evaluation of the Claimant's subjective complaints. Doc. 43 at 14. She noted the treatment records suggested that the Claimant had difficulty sitting for long periods of time, but found they did not necessarily support the limitations he described, such as an ability to sit for only between five and ten minutes at a time. Doc. 43 at 15-16. Instead, she noted, the ALJ relied on the Claimant's reports of his daily activities, which were inconsistent with an inability to sit for more than 10 minutes at a time. Doc. 43 at 16. For instance, the Claimant attended doctor's

6

appointments roughly two hours away and traveled to visit family five hours away.  Doc. 43 at 16 (citing AR 245, 519, 521, 957, 1750, 1758, 1763, 3022).  She also pointed out that while various healthcare providers observed the Claimant had difficulties changing positions, they did not observe difficulties sitting for long periods of time, despite appointments that lasted upwards of an hour.  Doc. 43 at 16.  Judge Mahoney noted the ALJ considered the Claimant's relatively normal daily activities, from yardwork to visiting his family.  *See* Doc. 43 at 17 (listing activities the ALJ considered).  Judge Mahoney concluded "[t]he ALJ could find that [the Claimant's] minimal limits in his activities of daily living were inconsistent with his allegations of disability pain (and particularly, that his activities of daily living were inconsistent with an inability to sit for more than ten minutes at a time)."  Doc. 43 at 17.

Judge Mahoney also noted that the ALJ considered the Claimant's "preoccupation with obtaining disability benefits."  Doc. 43 at 17.  For instance, the Claimant repeatedly filed for DIB and told his therapist he would wait until after his DIB hearing to find work.  Doc. 43 at 17-18 (citing AR 499, 589-90, 1320, 1808, 2264, 2303).  While the Claimant argues this evidence only shows he sought the benefits he believed he was owed, Judge Mahoney stated the ALJ could consider this evidence to determine whether the Claimant had other motivations for not working.  Doc. 43 at 18.

Judge Mahoney also reviewed the ALJ's evaluation of the Claimant's lumbar spine MRIs, noting that the ALJ considered the findings of several doctors.  Doc. 43 at 19l.  The ALJ's findings that the MRIs showed moderate abnormalities, as opposed to more severe abnormalities, were consistent with the conclusions of three of the four doctors who reviewed them.  Doc. 43 at 19-20.  Ultimately, Judge Mahoney found substantial evidence supported the ALJ's credibility determinations regarding the Claimant's subjective complaints.

Judge Mahoney next addressed whether the ALJ erred by rejecting the only medical opinion by an examining source in the record.  Doc. 43 at 20.  She noted that the record included other medical opinions, including from state agency consultants who

7

issued their opinions based on a review of the Claimant's treatment records. Doc. 43 at 21. She explained that the ALJ assigned "significant weight" to these opinions, which an ALJ is entitled to do when they are more consistent with the ALJ's review of the records. Doc. 43 at 21 (citing *Bowers v. Kijakazi*, 40 F.4th 872, 875-76 (8th Cir. 2022)). Further, Judge Mahoney noted that an ALJ that has no obligation to contact an examining source "merely because the ALJ finds the source's opined limitations vague." Doc. 43 at 22 (citing *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). Therefore, she found the ALJ did not impermissibly discount the opinion of an examining source. Doc. 43 at 21.

Finally, Judge Mahoney addressed the Claimant's Appointments Clause challenge, which she allowed the Claimant to address in supplemental briefing. Judge Mahoney rejected the challenge, citing her order in *Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917 (N.D. Iowa July 25, 2022). Doc. 43 at 22-23.

## IV. DISCUSSION

The Claimant makes the following objections to the R&R:

- the ALJ did not follow the law of the case,
- the ALJ did not provide good reasons for finding the Claimant was not credibly reporting his limitations,
- the ALJ erred by failing to fully and fairly develop the record, and
- the ALJ that decided the Claimant's case lacked the authority to do so.

Doc. 44.

### A. The Law of the Case

"The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand." *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) (citing *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997)). An

administrative agency is bound by the findings a district court makes before remanding the case. *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016). However, "[t]he law-of-the-case doctrine does not preclude a different conclusion if the adjudicator is presented with substantially different evidence." *Hulsey*, 622 F.3d at 924.

The Claimant argues the ALJ violated the law-of-the-case doctrine "by not addressing this Court's directions pertaining to the 8% off task limitation in the hearing decision." Doc. 44 at 4.[2] However, as Judge Mahoney noted, I did not make a specific finding with regard to the off-task limitation. Instead, I wrote:

> [I]t appears the VE contradicted himself by saying there was competitive work for someone who was off task 10% of the time but there was not competitive work for someone who took additional 5-minute breaks every hour. I find that the VE's testimony is contradictory, and without explanation, cannot support the ALJ's step-five determination that there are jobs in the national economy that [the Claimant] could perform.

AR 2632-33. Therefore, I ordered "[t]he Commissioner's determination that [the Claimant] was not disabled is reversed and this matter is remanded to the Commissioner for further proceedings consistent with this opinion," including that "the decision should be remanded for reconsideration of the VE's testimony." AR 2638-39. At no point did I find that the Claimant's RFC required an off-task limitation. As such, the Claimant's law-of-the-case argument must fail.

Further, the Appeals Council vacated the decision in which the initial ALJ found the Claimant required an off-task limitation. As such, the subsequent ALJ was not bound by the previous finding that the Claimant required an off-task limitation. On remand, that ALJ found the Claimant's mental examinations were normal and he rarely

---

[2] Confusingly, the Claimant also states, "We are not arguing that the ALJ necessarily had to keep the 8% off task limitation, but the ALJ owed this Court and [the Claimant] an explanation if despite the orders of this Court and the Appeals Council, the ALJ was going to drop the limitation that was why [the Claimant's] claim was remanded in the first place." Doc. 44 at 3. However, as Judge Mahoney noted, under the substantial evidence standard, two ALJs may come to different conclusions and both conclusions may be supported by substantial evidence.

9

complained of issues concentrating. Doc. 43 at 14 (citing AR 531, 560, 939, 978, 2288, 1798). Substantial evidence supports the removal of the off-task limitation.

## B.    The Claimant's Subjective Allegations

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). To assess a claimant's credibility, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). Under *Polaski*, the ALJ must consider:

(1)    the claimant's daily activities;

(2)    the duration, intensity, and frequency of pain;

(3)    the precipitating and aggravating factors;

(4)    the dosage, effectiveness, and side effects of medication; and

(5)    any functional restrictions.

*Polaski*, 739 F.2d at 1322; *see also* Social Security Ruling 16-3p.[3] The ALJ need not explicitly discuss each factor, so long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, the ALJ must "detail the reasons for

---

[3] The Eighth Circuit has acknowledged that Social Security Ruling 16-3p eliminated use of the term "credibility" and clarified that the evaluation of subjective symptoms is not an examination of an individual's character. *See Noerper*, 964 F.3d at 745, n.3. Rather, the review of subjective assertions is "an examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Id*. The Eighth Circuit notes this ruling largely changes terminology rather than the substantive analysis. *Id*. Because the parties refer to this section as the ALJ's "credibility" determination, I will do the same to avoid confusion.

discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis*, 353 F.3d at 647). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

In discrediting the Claimant's subjective allegations, the ALJ noted the Claimant's treatment had been conservative, consisting of medication management without narcotics or opiates. AR 1316. Claimant argues the ALJ "could not fairly understand the conservative course of treatment without understanding that it was because of Dr. [Ashar] Afzal's opinions, and it was not until Dr. [Hiroyuki] Oya's later opinions that the course of treatment could change." Doc. 44 at 8. However, treatment notes from both doctors were in the record and this argument therefore amounts to a disagreement with the ALJ's interpretation of these records.

Further, the ALJ relied on other evidence to discredit Claimant's subjective allegations. For instance, the ALJ found the medical imaging did not support the Claimant's subjective complaints of back pain. AR 1316. The ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the longitudinal evidence of record. The objective imaging and treatment do not support the claimant's subjective allegations.

AR 1321. The Claimant underwent an MRI in 2016 for his back pain. Dr. Afzal noted as follows:

> It is significant for several epidural lipomatosis that actually results in severe central stenosis at multiple levels. It appears to be worse at the L5 level where the spinal canal is nearly Y-shaped. He also has facet arthropathy, degenerative spondylosis of the lumbar facets and also degenerative disk disease.

AR 628. Dr. Afzal found "significant compression" of the thecal sac, which likely caused the Claimant's back pain. *Id.* Dr. Afzal suggested symptoms would not improve until the Claimant lost weight, as he was not a candidate for surgery or neuraxial injections. *Id.*

11

However, other healthcare providers later disputed these findings. Claimant had another MRI in July 2019, after which the radiologist noted only mild bilateral facet arthropathy and mild intervertebral disc dislocation. AR 3708. Ultimately, the radiologist concluded the Claimant had "unchanged mild L5-S1 level degenerative disc disease and spondylosis," and noted overall stable exam findings. AR 3709. While the MRI showed "[a]bundant epidural lumbosacral spine fat," it had "no clinical significance." AR 3728.

The Claimant saw Dr. Oya in July 2019, after his second MRI, and Dr. Oya referred the Claimant to the pain clinic for conservative pain management after concluding that while there was a loss of disc height and degenerative disk disease, the MRI was unremarkable. AR 3132. Further, the ALJ noted the Claimant did not complain of significant medication side effects, nor had he required surgery, inpatient treatment or hospitalization. *Id*. As Judge Mahoney concluded, the ALJ's determination that the MRIs showed no more than moderate abnormalities is consistent with the majority of the doctors who reviewed them.

The ALJ also considered the Claimant's daily activities (AR 1319-20), including that the Claimant regularly completed household chores, such as laundry and mowing the lawn, and physically cared for his parents. AR 1324. He spent time with friends and his nephew, and he was able to go grocery shopping. *Id.* In November 2018, the Claimant noted he had been driving his father back and forth to Rochester for his father's medical issues, which is inconsistent with his allegation that he was unable to sit for long periods of time. AR 1320.

The ALJ also considered the duration, intensity, and frequency of pain, the precipitating and aggravating factors and any functional restrictions. While the Claimant reported pain in his back, he routinely had normal gait, station, and preserved strength. He never sought care for acute periods of pain. AR 1321. At times, such as in March 2020, the Claimant denied lower back pain. AR 1318. As Judge Mahoney noted, the Claimant remained on largely the same medications to control his back pain and did not

12

report negative side effects from these medications. Doc. 43 at 18 (citing AR 899-900, 1891). Based on my de novo review, I agree with Judge Mahoney that the ALJ articulated sufficient reasons to discount the Claimant's subjective allegations.

## C.     *The Duty to Fully and Fairly Develop the Record*

The obligation to obtain additional medical evidence derives from the ALJ's duty to develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010). "Although that duty may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped." *Id.* An undeveloped statement may include "the report from a medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (internal quotations omitted).

If the record does not contain all the information needed to determine whether a claimant is disabled, an ALJ may take various steps, such as ordering additional exams or requesting additional evidence, to make the decision. 20 C.F.R. § 404.1520b(b)(2). However, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Ultimately, the question is whether the Claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, we will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

13

The Claimant argues the ALJ impermissibly rejected the only examining opinions related to the Claimant's physical limitations, which led to an underdeveloped record, as "treating or examining opinions are more valuable than nonexamining opinions to a degree that nonexamining opinions are not substantial evidence." Doc. 44 at 9. The Claimant argues the ALJ should have either sought to clarify Dr. Davenport's opinion or obtained additional opinions as to the Claimant's ability to perform work. Doc. 23 at 15. Dr. Davenport provided the only examining opinion in the record relating specifically to the Claimant's limitations.

Dr. Davenport saw the Claimant just once, during which she conducted a range of motion examination and considered the Claimant's subjective complaints. *Id*. She found that the Claimant could not sit, stand or move about for extended periods of time. AR 3722-24. She also concluded that he should not stoop, kneel or crawl, and that he was ill-suited for certain work environments, as loud noises triggered his PTSD. *Id*. She also suggested a 10-pound lifting restriction. *Id*. The ALJ discounted this opinion:

> [Dr. Davenport's opinion] is given little weight because it is vague, conclusory, and contains little helpful information in terms of formulating an RFC. (B23F p.5). It is also not fully consistent with the record, including evidence receiving at the hearing level, which supports some additional limitations. The vague limitations set forth, with the exception of the 10-pound lifting requirement, are given little weight due to the lack of specificity as to the claimant's ability to engage in basic work activities. Moreover, the claimant's range of motion testing showed no reduction in his wrist range of motion, he and intact grip strength and upper extremity strength (despite alleging CTS), and while he had limited range of motion on testing of his lumbar spine as well as straight leg raise positive test at 30 degrees, those limitations were not consistently seen upon routine examinations throughout the relevant period. Additionally, he was not noted to have issues in lower extremity strength, no issues with ankle range of motion, no deficits in gait were documented, and he had generally intact range of motion of his knees and hips, which do not support the limitation in sitting and standing, stooping, kneeling, and crawling.

AR 1322. Instead, the ALJ relied on the Claimant's medical history and reports by consultative examiners. AR 1321-24. The ALJ concluded the Claimant could perform

14

light work requiring the "ability to stand/walk 2/8 hours; the ability to climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; but never climb ladders, ropes, or scaffolds." AR 1315.

I agree with Judge Mahoney that there was sufficient evidence in the record for the ALJ to determine the Claimant's limitations. There are few differences between Dr. Davenport's recommendations and the ALJ's RFC findings. While Dr. Davenport suggested the Claimant could not sit, stand or move about for extended periods of time, the ALJ found the Claimant could sit, walk or stand for two out of eight hours per day. And while Dr. Davenport found the Claimant could never stoop, kneel or crawl, the ALJ found the Claimant could do so "occasionally." The ALJ's finding was supported by the Claimant's activities and various state examiners reached the same conclusion after reviewing his medical records. *See* AR 2713-15, 2731-34; *see also* AR 64-67, 80-82. As previously noted, the Claimant regularly completed household chores, such as laundry and mowing the lawn, and physically cared for his parents. AR 1324.

The Claimant argues Judge Mahoney erred by relying on *Bowers v. Kijakazi*, arguing that case relied on 20 C.F.R. § 404.1520(c), while 20 C.F.R. § 404.1527 applies to his application. Section 404.1257, which applies to claims filed before March 27, 2017, states: "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion or a medical source who has not examined you." 20 C.F.R. § 404.1257(c)(1). However, any medical source is to be considered in light of various factors:

> [T]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

15

20 C.F.R. § 404.1527(c)(3).

The subsequent version of this regulation, § 404.1520(c), states that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but will consider all opinions in light of a number of different factors. The Claimant's current application is the result of the Appeals Council consolidation of two applications, one filed in September 2014 and one filed in April 2018. When the Appeals Council remanded the consolidated application, it ordered the ALJ to apply the "prior rules" (e.g., 20 C.F.R. § 404.1257) pursuant to the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX) I-5-3-30.

Even under the prior rules, an ALJ was entitled to reject an examining opinion. *See* 20 C.F.R. § 404.1527 (describing how medical opinions are to be weighed). While examining opinions were generally given greater weight than non-examining opinions, they were considered and weighed in light of the supporting evidence. Dr. Davenport's report is perfunctory and it is not clear what other medical records or reports, if any, she relied on when forming her opinion. She provided little explanation for her conclusions while the non-examining sources provided detailed explanations for their findings. *See* AR 2713-15, 2731-34. I agree with Judge Mahoney that there is substantial evidence to support the ALJ's findings related to the Claimant's various limitations.

## D.    *Appointments Clause Challenge/FVRA*

The Claimant argues that Nancy Berryhill's service as Acting Commissioner violated the Federal Vacancies Reform Act (FVRA) and the Appointments Clause of the United States Constitution, which would render her ratification of the ALJ's appointment invalid. Judge Mahoney recommended I reject this argument based on her reasoning in *Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917 (N.D. Iowa July 25, 2022). The Eighth Circuit Court of Appeals recently addressed this issue in *Dahle v. Kijakazi*, __ F.4th __, 2023 WL 2379383 (8th Cir. Mar. 7, 2023), finding that Berryhill

was validly serving as Acting Commissioner when she ratified the appointments of Social Security Administration ALJs.  Based on *Dahle*, the Claimant's FVRA claim must fail.

## V.     CONCLUSION

For the reasons set forth herein:

1.       Plaintiff's objections (Doc. 44) to the Report and Recommendation (Doc. 43) are **overruled**.

2.       I **accept** the Report and Recommendation **without modification**.  *See* 28 U.S.C. § 636(b)(1).

3.       Pursuant to Judge Mahoney's recommendation:

  a.       The Commissioner's disability determination is **affirmed**; and

  b.       Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 28th day of March, 2023.

_____
Leonard T. Strand, Chief Judge